# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| INFINITY PHARMACEUTICALS, INC., *et al.*[1] | Case No. 23-11640 (___) |
| Debtors. | (Joint Administration Requested) |

## DECLARATION OF SETH A. TASKER IN SUPPORT OF THE DEBTORS' CHAPTER 11 PETITION AND FIRST DAY PLEADINGS

I, Seth A. Tasker, hereby declare as follows:

1. I am the Chief Executive Officer of Infinity Pharmaceuticals, Inc. and Infinity Discovery, Inc. (together, "Infinity" or the "Company"), the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"). I was appointed to that role on August 29, 2023. In that capacity, I am familiar with the Debtors' business, day-to-day operations and financial affairs.

2. In my role as CEO of Infinity, I have responsibility for business development, corporate finance, legal affairs, human resources and information technology functions. I have more than 20 years of experience in the pharmaceutical industry, and expertise in corporate finance and partnering transactions, corporate governance, securities, compliance, employment law and other legal and operational issues relevant to developing new medicines in both the private and public company setting. Prior to my appointment as CEO, I served as Infinity's Senior Vice President, Chief Business Officer since January 2020. Previously, I served as Infinity's Vice President, General Counsel from July 2016 to January 2020. Prior to joining Infinity in 2008, I

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Infinity Pharmaceuticals, Inc. (5706) and Infinity Discovery, Inc. (9480). The Debtors' mailing address is 1100 Massachusetts Avenue, Floor 4, Cambridge, MA 02138.

{1405.001-W0072751.}

served as associate counsel at Surface Logix, Inc., a privately held biotechnology company focused on developing improved drug therapies addressing Type 2 diabetes, cardiovascular health and oncology. I hold a J.D. and M.B.A. from Suffolk University and a B.S. in microbiology from the University of Vermont.

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 (the "Chapter 11 Cases") of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended or modified, the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court") and filed various motions described herein requesting certain relief in connection with the Chapter 11 Cases (collectively, the "First Day Pleadings"). I submit this declaration (the "Declaration") in support of the Debtors' Chapter 11 Cases and the First Day Pleadings.

4. Except as otherwise indicated herein, all statements set forth in this Declaration are based upon (a) my personal knowledge gained in my capacity as an officer of Infinity; (b) information provided to me by other members of Infinity's management team, including those under my supervision; (c) my review of relevant documents; and/or (d) my experience and knowledge of Infinity's operations and financial affairs. If called upon to testify, I could and would testify to the facts set forth in this Declaration.

5. Part I of this Declaration contains an overview of the rationale for these Chapter 11 Cases. Part II describes the Debtors' business, Part III describes in more detail the circumstances giving rise to the commencement of these Chapter 11 Cases and certain of the Debtors' prepetition wind-down efforts, Part IV describes the Debtors' proposed course for these Chapter 11 Cases, and Part V sets forth certain facts in support of the First Day Pleadings.

I. **OVERVIEW**

6. These Chapter 11 Cases are focused on finalizing the wind-down of Infinity's business following a merger effort that unsuccessfully concluded in late July 2023. Infinity has been unable, despite sustained efforts over an extended period of time, to achieve meaningful clinical outcomes to finance and otherwise support the continued development of its current pharmaceutical candidate, the experimental anti-tumor drug, eganelisib. Infinity's planned merger with MEI Pharma, Inc. ("MEI"), which would have been a vehicle both for the continuation of Infinity as an entity as part of a well-capitalized company and for the advancement of clinical development of eganelisib in patients with head and neck cancer, ended when MEI's shareholders did not approve that transaction. Following the termination of the MEI merger, Infinity was left without a financially viable path forward for its continued business as a stand-alone entity and, being unable to transact a merger as an alternative to a stand-alone business, Infinity was left with no option other than a winding down of its business. While some of its wind-down process has been accomplished prior to these Chapter 11 Cases, Infinity has commenced these Chapter 11Cases to complete its wind-down efforts in a manner that maximizes value for its stakeholders. Specifically, Infinity seeks to sell its remaining assets, primarily the intellectual property related to its eganelisib drug program, through a competitive process; to define the scope of its liabilities; and to confirm a Chapter 11 plan that will most efficiently distribute the value of Infinity's business to its stakeholders.

II. **OVERVIEW OF THE DEBTORS' BUSINESS**

*Business Operations and Corporate Structure*

7. Infinity Discovery, Inc. was incorporated in California on March 22, 1995 under the name IRORI and, in 1998, changed its name to Discovery Partners International, Inc., or DPI. In July 2000, the Company reincorporated in Delaware, where it remains incorporated. On

September 12, 2006, DPI completed a merger with Infinity Pharmaceuticals, Inc., or IPI, pursuant to which a wholly owned subsidiary of DPI merged with and into IPI. IPI, the surviving corporation in the merger, changed its name to Infinity Discovery, Inc., or IDI, and became a wholly owned subsidiary of DPI. Ultimately, the Company changed its corporate name from Discovery Partners International, Inc. to Infinity Pharmaceuticals, Inc., and its ticker symbol on the Nasdaq Global Market to "INFI." The Company's common stock formerly traded on the Nasdaq Global Select Market.

8.  Infinity Pharmaceuticals, Inc. is a company whose stock has historically traded on the Nasdaq Global Market. It conducts its business through itself and its wholly-owned operating subsidiary, Infinity Discovery, Inc. Infinity Pharmaceuticals, Inc. also owns all of the equity in Infinity Securities Corporation, a Massachusetts securities corporation that is not a debtor and that was created for the purpose of holding and investing cash. As of the Petition Date, Infinity Securities Corporation does not hold material cash or other assets, and it is expected that Infinity Securities Corporation will be dissolved pursuant to state law during the Chapter 11 Cases.

9.  Infinity is a research and clinical-development stage biopharmaceutical company with a focus on developing novel drugs for the treatment of cancer. Historically, Infinity has developed two categories of drug programs, the patidegib program and the duvelisib and eganelisib programs.

*The Patidegib Program*

10.  Infinity has developed a hedgehog inhibitor program, including the drug patidegib. Certain rights of Infinity to pursue the development of patidegib were obtained through a license from Johns Hopkins University ("JHU") in exchange for a minimal annual license fee. In 2013, Infinity out-licensed exclusive worldwide rights to the patidegib program to PellePharm, Inc.

("PellePharm") in exchange for contingent royalty and milestone payments and for Pellepharm's agreement to pay the JHU license fee. PellePharm subsequently assigned its rights and obligations in the patidegib program to Sol-Gel Technologies, Ltd. ("Sol-Gel"). In addition, in exchange for resolution of certain prior out-license obligations of Infinity to Mundipharma International Corporation Limited ("Mundipharma") and Purdue Pharmaceutical Products, L.P. ("Purdue"), Infinity agreed to pay Mundipharma and Purdue an aggregate royalty of 4% in respect of revenues from the patidegib program (but Mundipharma and Purdue hold no *in rem* rights in the patidegib program assets).[2]

11.     Following the license transaction with PellePharm/Sol-Gel, Infinity has not continued to actively support the patidegib program and has no obligation to do so. Infinity's only remaining role under the license was the collection of possible royalties and milestone payments, which are contingent on Sol-Gel's commercialization of the licensed rights, and the payment of the annual license fee to JHU and the royalty to Mundipharma and Purdue. In 2020, Infinity sold substantially all of the contingent royalty rights in patidegib to BVF Partners, L.P. and its affiliate ("BVF"), but Infinity retained the right to the contingent milestone payments. Infinity also retained the obligation to pay JHU the annual license fee (although, as noted above, Pellepharm/Sol-Gel are also obligated to make the JHU payments) and the obligations to pay the royalty to Mundipharma and Purdue.[3] Infinity deployed the proceeds of the sale of patidegib payment rights to continue its eganelisib development efforts. As a result, Infinity's rights in respect of the patidegib program are limited to the contingent milestone payments that may become

---

[2] As noted below, Infinity has similar 4% royalty obligations to Mundipharma and Purdue in respect of the duvelisib and eganelisib programs.

[3] As a matter of process, payments from Sol-Gel are made into an escrow account at Citibank. Citibank then distributes all of those payments, other than amounts owing by Infinity/Sol-Gel to JHU, Mundipharma, and Purdue, to BVF. Citibank distributes amounts owing to JHU, Mundipharma, and Purdue to those entities.

due, the timing and amount of which payments are uncertain, and its obligations in respect of patidegib are limited to those to JHU, Mundipharma, and Purdue. Infinity is planning to seek a purchaser for the rights to the patidegib milestone payments in which it retains an interest, but, given the uncertainties with respect to those milestones, it is not certain whether a buyer will surface or at what price.

### *The Duvelisib Program and the Eganelisib Program*

12.     Infinity has also developed products targeting the gamma and/or delta isoforms of PI3K in relation to anti-cancer applications, including duvelisib and eganelisib. This development has occurred through rights licensed by Infinity from Intellikine, Inc. ("Intellikine"), which was subsequently acquired by Takeda Pharmaceutical Company Limited ("Takeda") in exchange for royalty and milestone payments, which have been amended from time to time and currently amount to 25% of revenues in respect of the duvelisib program and milestone payments in respect of the eganelisib program. In addition, as with the patidegib program, in exchange for resolution of certain prior out-license obligations of Infinity to Mundipharma and Purdue, Infinity agreed to pay Mundipharma and Purdue an aggregate royalty of 4% in respect of revenues from the duvelisib and eganelisib programs (but, as with patidegib, Mundipharma and Purdue hold no *in rem* rights in the duvelisib or eganelisib program assets).

13.     As to duvelisib (known commercially as Copiktra©), in 2016, Infinity outlicensed exclusive worldwide rights to the duvelisib program to Verastem, Inc. ("Verastem") in exchange for contingent royalty and milestone payments. Verastem subsequently assigned its rights and obligations in the duvelisib program, and its related payment obligations, to Secura Bio, Inc. ("Secura Bio").

14. Following the license transaction with Verastem, Infinity has not continued to actively support the duvelisib program and has no obligation to do so, and Infinity's only remaining role under the license was the collection of possible royalties and milestones which are contingent on Secura Bio's commercialization of the licensed rights and the payment of the Takeda, Mundipharma, and Purdue royalty amounts. In 2019, Infinity sold most or all of those contingent payment rights to HealthCare Royalty Partners III, L.P. ("HCR"), but Infinity retained its obligations to pay Takeda, Mundipharma, and Purdue. Through the HCR transaction, Infinity also retained rights to payments on account of the duvelisib program over an agreed cap. While Infinity cannot predict with certainty whether any amounts will become available to Infinity over that cap, Infinity does not expect any near-term payments, and may receive no payments, under this arrangement. Infinity deployed the proceeds of the sale of duvelisib payment rights to continue its eganelisib development efforts. As a result, Infinity's rights in respect of the duvelisib program are limited to the contingent rights over the agreed cap, and its obligations in respect of the duvelisib program are limited to those to Takeda, Mundipharma, and Purdue. As with the contingent milestone rights related to the patidegib program, Infinity is planning to seek a purchaser for the rights to the duvelisib revenues over the agreed cap, but, given the uncertainties with respect to those payments, it is not certain whether a buyer will surface or at what price.

15. That leaves the eganelisib program, which as of the Petition Date is the only program of Infinity that remains in need of a development partner. The eganelisib program, like the duvelisib program, is based on in-licensed technology from Intellikine and remains subject to potential milestone payments to Takeda. As noted above, Infinity also has obligations to Mundipharma and Purdue related to the eganelisib program, though those entities do not have

rights in the program assets. Infinity has conducted sustained development efforts with respect to the eganelisib program and has achieved significant success. Specifically:

- MARIO-1, Infinity's Phase 1/1b clinical study, was designed to evaluate the safety, tolerability, pharmacokinetics, pharmacodynamics, and activity for eganelisib — both as a monotherapy and in combination with nivolumab — in 224 patients with advanced solid tumors, reached primary completion in December 2021.

- MARIO-275, Infinity's global, randomized, placebo-controlled Phase 2 study evaluating the effect of adding eganelisib to nivolumab, also known as Opdivo©, in checkpoint-naïve advanced urothelial cancer, or UC, patients whose cancer has progressed or recurred following treatment with platinum-based chemotherapy, also concluded in 2021, with promising results demonstrating improved overall survival in a 2-year landmark survival analysis.

- MARIO-3, Infinity's multi-arm Phase 2 study designed to evaluate eganelisib in the front-line treatment for metastatic triple negative breast cancer, or mTNBC, and metastatic renal cell carcinoma, or mRCC, concluded in July 2023, also with initial promising results in mTNBC.

- Infinity planned, and expended substantial resources in so planning, a Phase 2 clinical trial of eganelisib in patients with advanced head and neck cancer, to be known as MARIO-8. Infinity's ability to execute the MARIO-8 trial was dependent on the contemplated merger with MEI, the non-occurrence of which left Infinity without the resources necessary to run MARIO-8 and thereby continue development of eganelisib.

16. In sum, despite significant investment and promising results in initial clinical trials in the eganelisib program, Infinity is unable to advance the development of eganelisib without additional capital, which to date Infinity has been unsuccessful in securing despite considerable efforts over the past 18 months. Consequently, having no other active program besides eganelisib that could attract new financing opportunities prior to the Petition Date and as set forth in greater detail herein, Infinity terminated the development of eganelisib and pivoted to a wind-down strategy in order to maximize the value of its enterprise for its constituents. Development of eganelisib could be reinitiated by a buyer of the program or with additional investment in Infinity, and Infinity has actively and intensively sought a buyer for the program. Infinity would expect that any buyer of the eganelisib program would want to reach agreement with Takeda regarding the in-licensed technology from Takeda and the related royalty obligations; a buyer would not need to reach agreement with Mundipharma or Purdue because they do not have any rights in the eganelisib program assets.

*The Debtors' Cash*

17. As of the Petition Date, Infinity holds approximately $4.6 million in cash in its deposit and investment accounts, consistent with its historic practices, except that following the Petition Date, substantially all of Infinity's cash is held in a deposit account by Infinity Discovery, Inc. Infinity has no funded indebtedness, no liens on any of Infinity's cash, and no person or entity can claim that Infinity's cash is collateral for any indebtedness. Accordingly, Infinity plans to use its cash to finance these Chapter 11 Cases and the wind-down of its remaining business, and to distribute any excess cash to its stakeholders through a chapter 11 plan. Infinity does not propose to borrow funds under debtor-in-possession financing or otherwise.

*Secured Debt*

18.     As noted above, as of the Petition Date, Infinity has no secured debt. In connection with its 2019 purchase of Infinity's royalty rights related to the duvelisib program, HCR obtained "backup" liens on certain of Infinity's intellectual property related to that program to ensure that the purchased payment stream under the license to Secura Bio would be maintained, as is customary in such monetization transactions. Infinity does not believe that such liens will interfere with the sale by Infinity of assets related to the eganelisib program or otherwise adversely affect the Chapter 11 Cases. To the extent necessary, any liens asserted by HRC will be treated through a Chapter 11 plan filed by the Debtors.

*License Obligations*

19.     As discussed above, Infinity's development of products targeting the gamma and/or delta isoforms of PI3K, including duvelisib and eganelisib, has occurred through rights licensed from Takeda (the "<u>Takeda Agreement</u>"). The Takeda Agreement obligates Infinity to pay regulatory and commercial milestones to Takeda on eganelisib.

20.     The duvelisib and eganelisib program assets remain subject to the Takeda Agreement. The Takeda Agreement will need to be addressed in connection with a sale of assets related to the eganelisib program, but Infinity believes that the Takeda Agreement may be assigned in the Chapter 11 Cases to a buyer of the eganelisib program assets.

*Unsecured Obligations*

21.     Prior to the Petition Date, Infinity made efforts to stay current with unsecured obligations, but, as of the Petition Date, there are both currently payable and longer-term unsecured obligations of Infinity that have not been satisfied. As of the Petition Date, Infinity estimates that its total general unsecured debt aggregates to approximately $5.5 million. In addition, Infinity expects to accrue unsecured indebtedness as administrative expenses of its chapter 11 estate in

order to preserve and maximize the value of its estate, including employee, consultant, and professional fees.

*Equity Interests*

22. Infinity is a publicly traded company with 92,160,228 common shares outstanding and trading on the Nasdaq exchange as of the Petition Date. There are no classes of stock outstanding other than common stock. There are 10,330,263 options to purchase Infinity stock outstanding as of the Petition Date. The weighted average exercise price of the options is $2.35 per share. All of the outstanding options are significantly "out of the money" with Infinity shares closing at $0.097/share as of September 5, 2023.

**III.   EVENTS LEADING TO THESE CHAPTER 11 CASES**

*The MEI Merger*

23. On February 22, 2023, Infinity and MEI entered into an Agreement and Plan of Merger (the "MEI Merger Agreement"), under which Infinity would have become a wholly-owned subsidiary of MEI (the "Merger"). The Merger was subject to the receipt of certain approvals by the stockholders of Infinity and MEI, as well as other customary closing conditions. Infinity secured stockholder approval for the Merger during a special meeting of stockholders held on July 14, 2023. At its special meeting of stockholders held on July 23, 2023, MEI did not obtain MEI stockholder approval for the Merger, and the MEI Merger Agreement terminated as of July 23, 2023.

24. The Merger was an important component of Infinity's go-forward strategy and, as discussed above, Infinity planned its continued development of eganelisib in accordance with the expectation that the Merger would close. Thus, the non-occurrence of the Merger created substantial headwinds for Infinity's ability to continue as a going concern, and precipitated Infinity's decision to undertake an orderly wind-down to maximize value for its stakeholders. On

September 14, 2023, Infinity filed suit against MEI in the Delaware Court of Chancery, seeking to collect approximately $1,000,000 on a contractual claim against MEI in respect of the failed Merger (the "Merger Action").[4] Infinity intends to continue prosecuting the Merger Action during these Chapter 11 Cases, as it is an asset of Infinity's chapter 11 estate that may provide significant value to Infinity's stakeholders, though the timing and amount of recovery by Infinity in respect of the Merger Action is uncertain.

### *Prepetition Wind-Down Efforts*

25. Following the non-occurrence of the Merger and Infinity's strategic decision to suspend development of the eganelisib program, Infinity engaged in efforts to wind down its operations. In July 2023, Infinity undertook the following steps to conserve resources and preserve value for its constituents:

- A reduction in force of 21 employees, comprising approximately 78% of Infinity's workforce;
- A reduction in the size of the board from eight members to five; and
- An agreement with the remaining board members under which they have agreed to serve without compensation for the remainder of their board service.

Infinity has also taken steps to simplify and wind down its business operations prior to the Petition Date, including selling miscellaneous immaterial assets, selling immaterial furniture and equipment or abandoning it to its prior landlord, and vacating its historic headquarters space. As it enters these Chapter 11 Cases, Infinity is a streamlined company prepared to sell its remaining asset, the eganelisib program, which is comprised primarily of intellectual property assets.

---

[4] The Merger Action is docketed at *Infinity Pharmaceuticals Inc., v. MEI Pharma, Inc.*, C.A. No. 2023-0937-MAA (Del. Ch. Sept. 14, 2023).

26. In August and September, Infinity has further reduced its headcount to three employees and has taken steps to wind down remaining obligations related to its completed clinical studies to position eganelisib for a potential acquisition by a buyer.

*Sale and Marketing Process*

27. While Infinity has always sought to maximize the value of the eganelisib program and the Company as a whole, beginning in August of 2023, as a result of the failed MEI merger, Infinity began a new effort to sell the eganelisib program or the Company. Infinity retained SSG Capital Advisors, LLC ("SSG") for this additional effort to monetize its assets or business. Together with SSG, Infinity has continued to conduct a broad outreach effort to existing therapeutic companies, venture capital and other investment firms, universities, and advocacy organizations that it was aware of or had relationships with in the oncology space. Such inquiries were directed to companies or groups who Infinity believed may be interested in potentially purchasing Infinity's rights to eganelisib as a stand-alone development opportunity or in combination with other therapeutics that such companies have in development. Similarly, Infinity and SSG have sought parties who may be interested in a purchase of Infinity as a whole, specifically through a possible reverse merger that would preserve, and provide value for, Infinity's status as a publicly-traded company.

28. In all, approximately 379 potential purchasers were contacted by SSG and Infinity, many of which reviewed the comprehensive public information provided by Infinity and SSG relating to the eganelisib program. Of those potential purchasers, eleven (11) entered into confidentiality agreements with Infinity to obtain additional information regarding the eganelisib program or other aspects of Infinity's business.

29. Despite various conversations with representatives from the entities who responded, no such entity has, to date, submitted an actionable offer for a purchase of the eganelisib program or the Company as a whole.

30. Nonetheless, Infinity remains hopeful that the terms of a sale of its assets pursuant to section 363 of the Bankruptcy Code (the "Sale"), specifically the "free and clear" protections provided by a bankruptcy sale process, will attract buyers who indicated some prior interest in the eganelisib program but did not submit bids prior to the Petition Date.

31. Therefore, in order to facilitate the Sale, on the Petition Date, Infinity filed the *Motion of Debtors for Entry of Orders: (A)(I) Approving Bid Procedures Relating to the Sale of Substantially All of the Debtors' Assets, (II) Approving Stalking Horse Bid Protections, (III) Scheduling a Hearing to Consider the Sale, (VI) Approving the Form and Manner of Notice of Sale by Auction, (V) Establishing Notice and Contract Procedures for the Assumption and Assignment of Contracts and Leases, and (VI) Granting Related Relief; and (B)(I) Approving Asset Purchase Agreement and Authorizing the Sale of Certain Assets of the Debtors Outside the Ordinary Course of Business, (II) Authorizing the Sale of Assets Free and Clear of all Liens, Claims, Encumbrances and Interests, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* (the "Bid Procedures and Sale Motion"), which, among other things, details Infinity's proposed bidding procedures and sale process (the "Bid Procedures"). Subject to Court approval, the Bid Procedures contemplate the following key process dates, designed to proceed efficiently in the context of significant pre-bankruptcy marketing efforts:

| | |
|---:|---|
| Bid Procedures Hearing: | October 21, 2023, or such other date as the Court may determine |
| Bid Deadline: | December 1, 2023 |
| Auction: | December 6, 2023 |

| | |
|---|---|
| Sale Hearing: | December 8, 2023 (subject to the Bankruptcy Court's availability) |

33. Subject to approval of and pursuant to the Bid Procedures, SSG will continue to market Infinity's assets with the assistance and based on the knowledge and experience of Infinity's continuing management. Infinity believes, in the exercise of its business judgment, that the proposed Sale and auction structure will foster an open and competitive process and provide the best option to maximize value for all of their stakeholders. Indeed, given that Infinity has no product candidates presently undergoing active clinical trials (the prior clinical trials being in wind-down mode, as indicated above) and no realistic opportunity to obtain additional financing from the public or private markets, the only alternative to the Sale would be conversion to Chapter 7 and liquidation. In the Debtors' view, Chapter 7 liquidation would be exceedingly value destructive and wasteful, as the Debtors would immediately lose any substantial value as they attempt to monetize their unique assets and distribute value to stakeholders. Specifically, in a Chapter 7 liquidation, Infinity would likely lose the support of its remaining employees—the only people with the requisite knowledge to market and sell the eganelisib program—in the sale process, and, as a result, any material potential sale proceeds would be substantially diminished or would disappear.

***Covered Actions and Motion to Extend the Automatic Stay***

33. On May 3, 2023, a private plaintiff filed a shareholder action against Infinity in the United States District Court for the Southern District of New York, seeking among other things to enjoin the then-contemplated MEI Merger (the "Childress Action").[5] Also named as defendants

---

[5] The Childress Action is docketed at *Childress v. Infinity Pharmaceuticals, Inc., et al.*, Case No. 23-cv-03715 (S.D.N.Y. May 3, 2023).

in the Childress Action are Adelene Perkins, Infinity's former CEO and Chair of its Board of Directors (and current consultant on issues related to the sale of the eganelisib program), and Samuel Agresta, David Beier, Anthony Evnin, Richard Gaynor, Sujay Kango, Brian Schwartz, and Norman Selby, each a then-Director of Infinity (the "Childress Defendants").[6]

34. On August 15, 2023, a private plaintiff filed a putative class action against Infinity in the United States District Court for the District of Massachusetts, alleging violations of the federal securities laws (the "Dilbarian Action," and together with the Childress Action, a "Covered Action").[7] Also named as defendants in the Dilbarian Action are Adelene Perkins and Lawrence Bloch, Infinity's former President, Principal Financial Officer and Principal Accounting Officer (the "Dilbarian Defendants," and together with the Childress Defendants, "D&O Defendants").

35. Concurrent with the filing of these Chapter 11 Cases, Infinity has filed a motion seeking an extension of the automatic stay, or in the alternative, an injunction, to stay the Covered Actions as to the D&O Defendants (the "Stay Motion"). Though the Covered Actions are stayed as to Infinity, if litigation continues as against the D&O Defendants, Infinity will be forced to participate, defeating the purpose of the automatic stay. As discussed in the Stay Motion, Infinity would be forced to participate in any litigation of the Covered Actions because, among other reasons, it has indemnification obligations to the D&O Defendants that would require Infinity to pay the D&O Defendants' defense costs and fund a settlement or judgment, because of the risk of record taint and collateral estoppel that could occur in Infinity's absence, and because any discovery will necessarily involve Infinity and its employees and retained professionals. Thus, if

---

[6] While Infinity expects the Childress Action to be dismissed voluntarily as a result of the supplemental disclosures made by Infinity, the action remains outstanding, is subject to the automatic stay, and should be stayed as to all Childress Defendants for the reasons set forth in the Stay Motion (as defined herein).

[7] The Dilbarian Action is docketed at *Dilbarian v. Infinity Pharmaceuticals, Inc., et al.*, Case No. 23-cv-11865 (D. Mass. Aug. 15, 2023).

not stayed as to the D&O Defendants, the Covered Actions will force Infinity to expend limited estate resources and will distract Infinity's key employees and retained professionals during the pendency of these Chapter 11 Cases to the detriment of its stakeholders.

## IV.    PROPOSED COURSE FOR THESE CHAPTER 11 CASES

36.    Infinity intends to pursue the Sale in chapter 11 in order to obtain maximum value for the benefit of all of its stakeholders. Infinity has access to unencumbered cash that will, based on its budget, provide it with sufficient liquidity to satisfy all administrative claims accruing during the Sale process and Chapter 11 Cases in full, and to wind down Infinity's estate after the completion of the Sale process.

37.    In order to achieve its goals in chapter 11, the Debtors seeks the relief set forth in the First Day Motions, defined and as summarized below.

## V.    FACTS IN SUPPORT OF FIRST DAY PLEADINGS[8]

38.    To minimize the adverse effects of the commencement of these Chapter 11 Cases on the Debtors' ability to effectuate a timely and efficient restructuring process that will preserve and maximize the value of the Debtors' estate, the Debtors have filed the following motions (the "First Day Motions"):

- *Motion of the Debtors for Entry of an Order Directing Joint Administration of Related Chapter 11 Cases;*

- *Debtors' Application for Authorization to Employ and Retain Stretto, Inc. as Claims and Noticing Agent Effective as of the Petition Date;*

- *Motion of the Debtors for Entry of an Order (a) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (b) Authorizing the Continued Use of Existing Cash Management System, and*

---

[8] Capitalized terms not defined within this Section IV shall have the meaning ascribed to such terms in the respective First Day Motions.


*(c) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b);*

- *Motion of the Debtors for Entry of Interim and Final Orders Authorizing the Debtors to Pay Prepetition Wages, Compensation, Employee Benefits and Other Associated Obligations;*

- *Motion of the Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Tax and Fee Obligations and (II) Authorizing Financial Institutions to Honor and Process Related Checks and Transfers;*

- *Debtors' Motion for Entry of an Order Modifying the Requirements for the List of Equity Security Holders and Modifying the Notice Requirements for Equity Security Holders; and*

- *Motion of the Debtors for Entry of an Order Affirming the Applicability of the Automatic Stay or, in the Alternative, Extending the Automatic Stay.*

39. I have reviewed each of the First Day Motions, including any exhibits thereto, and the statements and facts set forth in each of the First Day Motions are true and correct to the best of my knowledge. I hereby incorporate by reference each of the factual statements set forth in the First Day Motions. These First Day Motions seek authority to, among other things, honor employee-related wages and benefit obligations and ensure the continuation of the Debtors' cash management systems and other business operations without interruption. I believe that the relief requested in the First Day Motions is necessary to prevent irreparable harm and to give the Debtors an opportunity to work towards successful chapter 11 cases that will benefit all of the Debtors' stakeholders.

40. Certain of the First Day Motions request authority to pay certain prepetition claims. I understand that rule 6003 of the Federal Rules of Bankruptcy Procedure provides, in relevant part, that the Court shall not consider motions to pay prepetition claims during the first twenty-one (21) days following the filing of a chapter 11 petition, "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm." In light of this requirement, the Debtors have narrowly tailored their request for immediate authority to pay certain prepetition claims to those

circumstances where the failure to pay such claims would cause immediate and irreparable harm to the Debtors and their estate. Other relief will be deferred for consideration at a later hearing.

41. In sum, I believe that the relief sought in each First Day Motion: (a) is necessary to enable the Debtors to operate in chapter 11 with minimal disruption or loss of value; (b) is necessary to provide the Debtors with a reasonable opportunity for a successful Sale and reorganization; (c) is necessary to avoid immediate and irreparable harm; and (d) best serves the interests of the Debtors' stakeholders.

## **DECLARATION**

42. Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 29, 2023　　　　　　　　　**Infinity Pharmaceuticals, Inc.**
　　　　 Cambridge, MA

　　　　　　　　　　　　　　　　　　　　　 */s/ Seth A. Tasker*
　　　　　　　　　　　　　　　　　　　　　 Seth A. Tasker
　　　　　　　　　　　　　　　　　　　　　 Chief Executive Officer